## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**KELLI S. J.,**[1]

       **Plaintiff,**

                           **Case No. 1:21-cv-11656**

    **v.**                          **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kelli S.J. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On July 2, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since September 10, 2017. R. 121, 135, 173–74. The application was denied initially and upon reconsideration. R. 136–40, 144–46. Plaintiff sought a *de novo* hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. Pro. 25(d).

administrative law judge ("ALJ"). R. 147–48. ALJ Karen Shelton held a hearing on April 21, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 42–85. In a decision dated June 19, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to April 21, 2020, but that she became disabled on that date and has remained disabled through the date of that decision. R. 24–36. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 24, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 26, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[3] On November 17, 2021, the case was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through June 30, 2021. R. 27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 10, 2017, her alleged disability onset date, and the date of the decision. R. 27–28.

At step two, the ALJ found that Plaintiff's cervical and lumbar degenerative disc disease, cervical radiculopathy, migraines, and major depressive disorder were severe impairments. R. 28. The ALJ also found that Plaintiff's diagnosed peptic ulcers, fatty liver, anemia, chronic sinusitis, thalassemia, and hyperlipidemia were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 28–30.

At step four, the ALJ found that, as of Plaintiff's alleged disability onset date of September 10, 2017, she had the RFC to perform sedentary work subject to various additional limitations. R. 30–34. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an executive chef and bartender. R. 34.

At step five and relying on the testimony of the vocational expert, the ALJ found that, prior to April 21, 2020, there were jobs that existed in significant numbers—*e.g.*, jobs as a preparer, an ink printer, and a touch up screener—in the national economy that Plaintiff could perform. R. 35–36. However, on April 21, 2020, Plaintiff's age category changed and, under the Medical-Vocational Guidelines, she was deemed disabled. R. 36. The ALJ therefore concluded that Plaintiff was not disabled prior to April 21, 2020, but that she became disabled on that date, that she has continued to be disabled through the date of the decision, and that her disability was expected to last twelve months past that onset date. R. 36.

7

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 21; *Plaintiff's Reply Brief*, ECF No. 29. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26.

## IV.   DISCUSSION

### A.   RFC

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to fully account for Plaintiff's arm and hand impairment and because the ALJ relied on her own speculation and lay interpretation of the medical evidence when crafting the RFC. *Plaintiff's Brief*, ECF No. 21, pp. 21–33, 42–43; *Plaintiff's Reply Brief*, ECF No. 29, pp. 1–5. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ

has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that, since her alleged disability onset date of September 10, 2017, Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, the undersigned finds that since September 10, 2017, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except frequent ramps and stairs; no ladders, ropes or scaffolds; frequently balance, stoop, and crouch; occasionally kneel or crawl; frequently handle and finger; should avoid and have less than occasional exposure to extreme cold or humidity; no unprotected heights or hazardous machinery; can execute simple work instructions and make simple work decisions.

R. 30. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, evidence that Plaintiff was involved in a horseback riding accident and a car accident and had undergone seven surgeries on her neck, including two procedures since her alleged disability onset date; that Plaintiff received pain management treatment in 2017 and that 2017 neurosurgery records revealed that Plaintiff was initially doing well following her November 2016 cervical surgery, albeit with some ongoing neck stiffness and wrist drop, but with strength measuring 4/5; that she reported worsening symptoms in 2018 with weakness and numbness in the right arm, ongoing neck pain, decreased range of motion, tenderness, abnormal gait, and strength of 4/5; that following cervical fusion surgery in February 2018, she was doing well, but still had cervical radicular symptoms; that at a July 2018 follow up appointment she ambulated well and had intact sensation and no edema; that Plaintiff underwent a revision

9

discectomy and fusion in August 2018 with screw removal, resulting in improvement in her neck pain and radiculopathy, but that she experienced stiffness and muscle spasm; that Plaintiff reported to Gary Oxenberg, M.D., during a November 2018 consultative examination, *inter alia*, that her neck pain was a 10 out of 10 despite her surgeries, that she experienced numbness and tingling in her arms when sleeping and that physical therapy and pain medication decreased her pain to a 7 out of 10; that Plaintiff was independent in all activities of daily living, but that they took longer because of pain; that Dr. Oxenberg's physical examination revealed decreased neck range of motion secondary to pain and no edema, and that Plaintiff could oppose her thumbs to all digits and had a 5/5 grip and pinch strength bilaterally; that Plaintiff could squat, bend, walk on her heels and toes, and ambulate without any difficulty; that she had mild low back pain with straight leg raising to 90 degrees from both the sitting and supine positions; that she had decreased lumbar range of motion, but 5/5 strength throughout and no sensory deficits. R. 31–32. The ALJ further detailed Plaintiff's routine medical treatment and medical status in 2019 and 2020 as follows:

> The claimant continued with pain management treatment in 2019 for bilateral neck pain radiating to the upper extremities. She had a right trapezius injection with no relief. She went to physical therapy 3 times a week. *She had numbness and tingling in the arms, but stated that her medication regimen was effective at managing her pain*. She exhibited decreased range of motion and tenderness. She had negative straight leg raise and no atrophy. She was treated for cervical radiculopathy (Exhibit 10F).

> *Primary care records in 2019 and 2020 show only routine medication refills and follow up appointments*. The claimant reported chronic pain and headaches. She had reduced cervical range of motion and diminished reflexes, but *normal gait and no edema or atrophy. She reported being able to work out at the gym*. She was seen in the emergency room in September 2019 after a head injury and loss of consciousness. An updated cervical MRI showed degenerative disc disease and prior surgeries (Exhibits 16F, 17F).

> A cervical MRI in April 2020 showed *no concerning canal stenosis* with evidence of facet arthropathy, spurring, and *stable* bilateral foraminal stenoses. A lumbar

MRI in July 2019 showed an unchanged disc herniation at L5-S1 (Exhibit 19F, pages 4, 54). *The claimant continued with routine outpatient treatment for neck pain, low back pain, and radiculopathy with medication refills. She also tried trigger point injections. She was recommended for a TENS unit. The claimant reported some relief with medications, injections, and physical therapy* (Exhibit 19F).

R. 32–33 (emphasis added). After considering this evidence, the ALJ went on to explain her RFC

determination as follows:

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the available medical evidence since the alleged onset date. The claimant has a long history of injuries to her neck and back resulting in several surgeries over the years. The claimant remained able to work at substantial gainful activity levels for many years after sustaining her injuries. She ultimately stopped working at the time of the alleged onset date and had two additional surgeries since that date. *Aside from her surgeries, she had routine pain management care with medications, physical therapy, and more recently, trigger point injections.* She also has a history of treatment for migraines, including medication management. *The majority of the claimant's treatment since the alleged onset date has been conservative. Despite her care, she has had residual pain and migraines. To accommodate her ongoing symptoms, the undersigned finds that a limitation for a range of sedentary work is appropriate. The undersigned has assigned additional postural, manipulative, and environmental limitations to accommodate her pain, migraines, and potential medication side effects.* Further, to accommodate the more recent mentions of depression, she would be further limited to simple work. No additional limitations are warranted based on the mostly conservative treating record and the lack of any mental health treatment.

Beginning with the claimant's change in age on the established onset date, the claimant's residual functional capacity becomes disabling by virtue of the Medical-Vocational Guidelines, but not prior to that date. No additional disabling limitations are warranted prior to the established onset date for the reasons discussed above.

R. 33 (emphasis added). In the view of this Court, this record contains substantial evidence to

support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at

554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, argues that this RFC determination fails to fully account for her arm

and hand impairment. *Plaintiff's Brief*, ECF No. 21, pp. 21–33; *Plaintiff's Reply Brief*, ECF No.

11

29, pp. 3–5. Plaintiff specifically contends that, despite finding that her cervical radiculopathy is severe and acknowledging Plaintiff's testimony that she had nerve pain from her neck to her elbows and in her feet, "the ALJ failed to include any limitations in the use of her hands in assessing her RFC." *Plaintiff's Brief*, ECF No. 21, p. 21; *see also id*. at 32; *Plaintiff's Reply Brief*, ECF No. 29, p. 3. Plaintiff argues that the ALJ's limitation to frequent handling and fingering was based on improper cherry-picking of Plaintiff's treatment records and is insufficient; instead, Plaintiff contends, she should have been limited in her RFC to only occasional handling and fingering. *Plaintiff's Brief*, ECF No. 21, pp. 21–33 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 29, pp. 3–5.

Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff engages in an overstatement of some of the medical evidence and ignores evidence contrary to her arguments. *Plaintiff's Brief*, ECF No. 21, pp. 24–32. For example, Plaintiff contends that "she consistently had reduced motor strength of the left upper extremity." *Id*. at 24 (citing R. 312, 318, 324, 330, 336, 342, 348, 354, 360). However, the cited records—all but one dated prior to her alleged disability onset date—reflect that Plaintiff had "4-5/5" motor strength in her left upper extremity (and that Plaintiff had 5/5 motor strength in her right upper extremity). R. 312, 318, 324, 330, 336, 342, 348, 354, 360. Plaintiff also contends that she was evaluated "on February 27, 2018, for right arm pain subsequent to her ACDF surgery. (Tr. 726)[,]" *Plaintiff's Brief*, ECF No. 21, p. 27, but this evidence also reflects that Plaintiff had "full strength in her arms. Sensation to light touch is intact." R. 726. Although Plaintiff points to an October 2018 examination that "found a restricted range of motion of cervical spine in all directions, with rigidity and tenderness upon palpitation and other abnormal findings. (Tr. 793)[,]" *Plaintiff's Brief*, ECF No. 21, p. 27, this examination also found that Plaintiff's bilateral upper limb strength, including

wrists, "is full 5/5." R. 793. Plaintiff also argues that she was evaluated "on August 7, 2018, for chronic cervical pain radiating to occipital causing headaches, to the bilateral scapula and intermittent paresthesias in both hands. (Tr. 735-40)[,]" *Plaintiff's Brief*, ECF No. 21, p. 27, but the physical examination reflected, *inter alia*, no crepitus, masses, effusion, edema, or tenderness in bilateral shoulders, elbows, and wrists, with full range of motion with active and passive movements in each. R. 737. Plaintiff also points to a September 2018 evaluation of her complaints of neck stiffness and pain, back pain, numbness, bilateral decreased arm weakness, muscle spasms, unsteady gait," *Plaintiff's Brief*, ECF No. 21, p. 28 (citing R. 434–35, 455–56 (duplicate)), highlighting that "[c]ervical pain was noted upon exam, bilateral Hoffman's reflexes were absent, and she was to continue her medication regimen, restrict activity, and wear a cervical collar. (Tr. 437, 457-58)." *Id*. at 28–29. However, this evidence also reflects that all other reflexes—including bilateral brachioradialis, biceps, triceps, and grips—were normal, that range of motion of the neck was normal, that there was 5/5 strength throughout, that gait and tandem walking coordination were normal, R. 436, and that Plaintiff was "[d]oing well post op without complications[.]" R. 437. Plaintiff further points to "[a]n inability to taper the gabapentin further was noted [during an examination on October 14, 2019] due to the extent of headache, arm numbness and neck pain. (Tr. 580)[,]" *Plaintiff's Brief*, ECF No. 21, p. 32, but that examination included findings of, *inter alia*, "upper and lower extremities to be negative for clubbing, cyanosis, or edema. Capillary refill is brisk. Femoral, popliteal, dorsalis pedis, and posterior tibial pulses are all normal. neck cervical ROM significantly reduced, but preserved grip strength UPPER extremity ROM full extension/flexion at elbow, no atrophy of thenar muscles[.]" R. 581. This evidence undermines Plaintiff's assertion that the medical record warranted a greater limitation in the upper extremities than that found by the ALJ.

13

In any event, to the extent that Plaintiff points to some contrary evidence in the record, that effort does not establish impermissible cherry picking. As detailed above, the ALJ expressly considered, *inter alia*, that Plaintiff generally received conservative care during the relevant period; that medication, injections, and physical therapy reduced at least some of Plaintiff's symptoms; that Plaintiff was independent in all activities of daily living; that she was able to work out at the gym; that she had 5/5 grip and pinch strength bilaterally. The ALJ also acknowledged Plaintiff's ongoing complaints of pain, numbness, stiffness as well as Plaintiff's history of surgeries that included two surgeries within the relevant time period. R. 31–34. In other words, the ALJ specifically considered all relevant medical evidence, in support of—and contrary to—her finding that Plaintiff was not disabled. *Id*. The Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Davison v. Comm'r of Soc. Sec.*, No. CV 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements."). Moreover, even if Plaintiff continued to experience some pain

14

and discomfort, such evidence does not establish that Plaintiff was disabled. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986) ("[W]hile Welch's pain may be constant and uncomfortable, it is not disabling or severe."); *see also Null v. Saul*, No. CV 2:18-759, 2019 WL 2867201, at *3 (W.D. Pa. July 3, 2019) ("It is well-established, however, that a claimant need not be pain free or symptom free to be found not disabled. Rather, the claimant must still show he is unable to perform substantial gainful activity. . . . As set forth above, the ALJ here did not disagree that Plaintiff experiences significant, and sometimes increasing, pain; he found, however, that the pain was sufficiently controlled with medication and other treatment to permit Plaintiff to perform some substantial gainful activity.") (internal citations omitted); *McIntyre v. Berryhill*, No. CV 17-2176, 2018 WL 5962476, at *5 (D.N.J. Nov. 13, 2018) ("It must be remembered, however, that to be fit for work, a claimant need not be pain-free or symptom-free.") (citing *Welch*, 808 F.2d at 270); *Bennick v. Berryhill*, No. 3:16-CV-2391, 2017 WL 2957870, at *12 (M.D. Pa. July 11, 2017) ("Importantly, the ALJ did not find Plaintiff symptom-free: she noted Plaintiff's testimony about the effectiveness of pain medications and acknowledged her previous and future surgeries related to arthritis. As many decisions in the Third Circuit have noted, a claimant 'need not be pain-free to be found 'not disabled' especially when her work issue requires a lower exertional level.'") (citations omitted). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose either Plaintiff's or this Court's own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Moreover, Plaintiff does not point to any medical opinion that requires only occasional handling and fingering. *See generally Plaintiff's* Brief, ECF No. 21; *Plaintiff's Reply Brief*, ECF

No. 29. Notably, as previously discussed, an ALJ need include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted).

Plaintiff further argues that the ALJ improperly relied on her own lay opinion and speculation when crafting the RFC because there was no "medical opinion being credited with regards to all of" Plaintiff's limitations. *Plaintiff's Brief*, ECF No. 21, p. 42.[4] Plaintiff's argument is not well taken. As set forth above, the ALJ properly relied on record evidence, not merely her own lay opinion when assessing Plaintiff's RFC. R. 32–34. To the extent that Plaintiff suggests that an ALJ must support every RFC limitation with a matching medical opinion, Plaintiff is mistaken. As previously discussed, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). Accordingly, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Notably, "the ALJ is not precluded from reaching RFC

---

[4] Notably, Plaintiff does not point to any medical opinion that requires only occasional handling and fingering. *See generally Plaintiff's Brief*, ECF No. 21; *Plaintiff's Reply Brief*, ECF No. 29.

determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

### B. Subjective Statements

Plaintiff also challenges the ALJ's consideration of Plaintiff's subjective complaints, contending that medical evidence supports these complaints and that the ALJ erred in failing to discuss that evidence. *Plaintiff's Brief*, ECF No. 21, pp. 33–41; *Plaintiff's Reply Brief*, ECF No. 29, pp. 5–8. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

17

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 31, 33. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 33. As previously discussed, the ALJ detailed years of medical

18

evidence and record testimony to support her findings. R. 31–34. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff nevertheless contends that the medical evidence discussed by the ALJ, including evidence that Plaintiff had undergone surgeries since her alleged disability onset date, supports Plaintiff's subjective complaints; she argues that the ALJ improperly engaged in a selective review of the evidence. *Plaintiff's Brief*, ECF No. 21, pp. 34–40. However, this Court has already discussed that the ALJ properly considered all the evidence, including contrary evidence, and that substantial evidence supports her consideration of such evidence.

Plaintiff further complains that "the record as a whole does not support *the ALJ's finding* that [Plaintiff's] medications were effective in controlling her symptoms." *Plaintiff's Brief*, ECF No. 21, p. 40 (emphasis added). As the ALJ's decision makes clear, however, this was not the ALJ's finding; it was Plaintiff herself who "stated that her medication regimen was effective at managing her pain." R. 33 (citing Exhibit 10F, R. 493–532, at the end of the paragraph); *see also* R. 495, Exhibit 10F/3 ("She reports b/l neck pain that radiates into both shoulders and down both arms. She reports that she went to Rothman for an injection in her right trapezius with no relief. She reports that she still attends PT 3 x week with relief. She reports weakness in her right arm. She reports a numbness and tingling sensation in her fingers. She reports a current pain level of 7/10 with medications. *She reports that her medication regimen is effective at managing her pain*.") (emphasis added). Moreover, the ALJ expressly found that, "[d]espite her care, she has residual pain and migraines. To accommodate her ongoing symptoms, the undersigned finds that a limitation for a range of sedentary work is appropriate. The undersigned has assigned

additional postural, manipulative, and environmental limitations to accommodate her pain, migraines, and potential medication side effects." R. 34. In other words, the ALJ credited Plaintiff's subjective complaints that she experiences ongoing pain and migraines, and the ALJ accommodated those conditions when crafting the RFC. *Id*. At bottom, Plaintiff's insistence that the record fully supports her subjective complaints boils down to simply a disagreement with the ALJ whose decision the Court has already explained is supported by substantial evidence.

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec*., 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec*., 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id*.

## C.     Step Five

Finally, Plaintiff challenges the ALJ's step five determination,[5] arguing that the Commissioner failed to carry her burden at that stage because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of

---

[5] As previously detailed, the ALJ relied on the Medical-Vocational Guidelines to find that, beginning on April 21, 2020, when Plaintiff's age category changed, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 36.

Plaintiff's claimed limitations. *Plaintiff's Brief*, ECF No. 21, pp. 43–44. Plaintiff's argument is not well taken.

At step five, the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak*, 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and

21

otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 30, 75–78. The vocational expert responded that the jobs of preparer, ink printer, and touch up screener could be performed by such an individual. R. 77–78. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions is that all her alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed. *Cf. Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) ("'[I]t would be error to include limitations not credibly established by the record when relying on a vocational expert's

22

testimony to make a disability determination.'") (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)).

In short, the Court finds that the Acting Commissioner has carried her burden at step five of the sequential evaluation and concludes that substantial evidence supports the ALJ's determination in this regard.

## V.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 13, 2023                         _____*s/Norah McCann King*_____
                                                            NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE